BAILES, Judge.
This is a petitory action in which plaintiff is seeking to be decreed the owner of a tract of land in Livingston Parish containing about .58 acre. From a judgment of the lower court recognizing plaintiff to be the owner of this property, the defendant appealed.
After this appeal was granted the plaintiff died, and by proper motion his widow and heirs moved to be substituted as parties plaintiff. The motion was granted, and thereby the plaintiffs now are plaintiff’s widow, Mrs. Richard W. Thompson, and his children, Lem Thompson, Minnie Thompson Cogley, Adeline Thompson Rogers, Delia Thompson Scott, and Jessie James Thompson, Sr. These parties will hereinafter be referred to collective!y as plaintiff.
The property, title to which is in dispute, is situated in Pleadright Section 40, Township 6 South, Range 6 East, Livingston Parish, Louisiana, more fully described as follows:
Commencing at Richard Thompson’s southwest corner on east margin of Albany South Highway at a distance of one-half acre southerly from southwest corner of Albany school tract of 2 acres and measure along said Thompson’s line N. 78 degrees 55 minutes east 374 feet to corner of Mrs. O. Frazier’s lot, thence south 11 degrees 05 minutes east 160 feet to old surveyed line of South Albany subdivision; thence with same North 79 degrees 10 minutes west 399 feet to margin of Albany South Highway; thence along same North 5 degrees west 14 feet to point of beginning, all as per survey by C. M. Moore, C. E. & Surveyor, as per plat dated June 23, 1960.
Plaintiff alleges he acquired title to subject property above described by purchase from the children and heirs at law of Bolivar E. Thompson [1] by deed dated and filed for record July 18, 1960, as entry No. 36,447 of the records of Livingston Parish, Louisiana. Whatever right these vendors had in *284 the property was acquired by inheritance from their father under a judgment of possession rendered in the matter of the Succession of Bolivar E. Thompson, No. 887 on the docket of the 21st Judicial District Court in and for Livingston Parish. In this judgment the vendors in the said deed to Richard W. Thompson were recognized, ex parte, as owners of certain property described as follows.
“A certain piece or parcel of land situated in the northeast comer of Headright Section 40 Township Six S R 6 East and bounded north by G.H.A. Thomas, East by Little Natal-bany, South and West by vendor, containing 20 acres, more or less, and being part of same property acquired by this vendor from N. M. Foster by act passed before W. J. Settoon, Not. Pub., on 22nd day of October 1895 and recorded in Book No. 8 pages 217 and 218.[2]
“Being the property acquired by decedent in Book 14 page 194, less the following sales and conveyances made by decedent, viz (COB and page numbers omitted. These are twenty in number)”
The' title of plaintiff is deraigned as follows :
1. Martha K. Knoves and W. C. Knoves sold to N. M. Foster by deed dated September 13, 1893, recorded in COB 7 entry No. 2764,- the following property:
“One Hundred acres more or less being a portion of Headright of Section 40 in Township Six, South of Range Six East in the Greensburg Land District, known as the Nancy Settoon tract, the said land being situated in the Parish of Livingston in said State.”
2. N. M. Foster sold to James King by deed dated October 22, 1895, recorded in COB 8, page 217 the identical property by the same description as set forth next here-inabove.
3. James A. King sold to Bolivar Thompson by deed dated June 10, 1904, recorded in COB 14, page 394, the next here-inabove described property, however under the identical description as is shown in the judgment of possession set out supra.
4. By act of partition between Bolivar Thompson and his wife, Mrs. Sarah Jane White (from whom he was separated by judgment of court) dated October 10, 1917, recorded in COB 32, page 74, Mrs. Sarah Jane White acquired the following described property:
“(1) Twenty acres of land, more or less, in the northeast corner of Head-right Forty, T. 6, S. R. 6 E, bounded North by G. H. A. Thomas, East by Little Natalbany, South and West by J. A. King, acquired by Boliver E. Thompson from J. A. King, as per deed in Book 14, page 394.
* * £ * * *
“Less and accepting from the above land firstly described, the following: * * *
“And less One acre, more or less, in Headright Section 40, T. 6 S., bounded on the North by School Tract of land, East by B. E. Thompson, South by Mike Bartish, West by Public Road, known as Greenburg and Springfield road, being t/z acre North and South and two acres in length East and West, sold by Boliver E. Thompson to F. L. Faust, per deed of record in Book 28, page 291.”
5. Mrs. Sarah Jane White sold to Bolivar E. Thompson by deed dated October 10, 1917, the identical property which she acquired in the act of partition next herein-above described.
With the property acquired by Thompson described as located in the northeast comer *285 of Headright Section 40, it is apparent and certain the north line and the east line of the twenty acres are fixed by the north and east lines of said Section 40. Consequently the two lines of uncertain location are the west and south lines. It is further apparent from a reading of the description by which Thompson acquired the twenty acres of land from James A. King there is no wáy to determine from the description itself the exact location of the twenty acres. In this connection Mr. C. M. Moore, Civil Engineer and Registered Surveyor who surveyed the twenty acres and made a plat thereof for Thompson in 1935 testified it was impossible for him to take the description of the twenty acres as contained in the deed by which Thompson acquired it and locate it on the ground.
It should be noted although the west and south lines, insofar as the description provided, are uncertain of determination, no evidence was introduced by plaintiff to explain the description.
The property, the title of which is here under consideration, was triangular in shape as late as 1954, however because of a widening of the road contiguous to this property the west point of the triangle was cut-off thus creating a west line of fourteen feet in length.
It appears to us the property acquired this configuration because of the uncertainty of the south line of the Thompson property. From a point on the east margin of the public road, which road is the west boundary of the tract acquired by Thompson from King[3], the same as or identical to the southwest corner of the one (1) acre tract of land acquired by Fitzhugh L. Faust from Thompson by deed dated October 21, 1914, recorded COB 28, page 291 of the records of Livingston Parish, Thompson established, according to the evidence before us, a south boundary to his twenty acre tract. On this line he built a wire fence, the re-inains of which' J. C. Kerstens, Civil Engineer who surveyed this property on March 19, 1962, found to still exist. The traverse of this line running from the point above described is North 78 degrees 55 minutes East. According to the testimony of the witness who testified he assisted Thompson in erecting the fence stated the fence extended east to Little Natalbany River.
Mr. C. M. Moore testified that in 1935, at the request of Thompson, he made a survey of the twenty acre tract, established all corners and ran all the lines, all in accordance to the location thereof as pointed out to him on the ground by Thompson. He found 33 acres to be contained within the lines he ran from the corners so pointed out to him by Thompson. The south line of this survey began at the identical point on the public road as did the line above described and from which Thompson built his fence except the traverse of this new line ran North 79 degrees 10 minutes West and extended in an easterly direction to Little Natalbany River. Mr. Moore testified that the acreage between the old fence line and the south line as shown on his plat of survey of 1935 comprised approximately eight acres. Mr. Moore also testified that when he surveyed this property for Thompson no owners of any of the adj acent properties were present. It appears at that time the property south of Thompson’s property was owned by a man named Michael Bartish.
We are convinced the location of the old fence line from the public road on the west to Little Natalbany River on the east was regarded at one time by Thompson as the south line of his “twenty” acre tract (which then must have contained approximately twenty-five acres) because in the sale of the one acre of land by Thompson to Faust, as shown above, the south line thereof coincided with the location of the old fence line and this one acre of land was described as *286 bounded on the south by property of Mike Bartish.
There is no way for us to determine either from the acts of conveyances before us in the record or from the testimony of the witnesses the location of the twenty acres in Headright Section 40 which was acquired by plaintiff’s ancestor in title, Bolivar E. Thompson, and therefore it logically follows, we have no way of determining how he fixed the southern limits of this tract of land. The only survey, insofar as we are informed from the record, that was ever made of this tract of land was the ex parte survey of Mr. C. M. Moore. It has no weight in establishing title to the property here in question.
In Article 3 of plaintiff’s petition he alleges:
“In the alternative, and only in the event the Court should hold that petitioner did not become the owner of said property under and by virtue of the deed described in paragraph 2a above [4], then petitioner shows that in truth and in fact he became the full and complete owner thereof under and by virtue of the following chain of title, to-wit:
a.By virtue of a deed from Mary June Addison Cunningham, Mary Cunningham Stewart, Elmore Ernest Cunningham, Alice Cunningham Loftis, Margie Ann Cunningham, Patsy Elaine Cunningham, Wallace Faye Cunningham, Walter E. Cunningham, Beatrice Fun-ningham, Homer Alden Cunningham, Henry R. Cunningham, Corrine Cunningham Warnock, Brady William Cunningham, and George Howard Cunningham, as sole and only heirs of George W. Cunningham, dated May 16, 1946 and June 11, 1946, recorded in COB -, Page -, records of Livingston Parish, Louisiana, the said property conveyed by said deed being described as follows, to-wit:
One acre of ground, more or less in Headright Section Forty (40), Township Six South, Range Six East, bounded on the north by School tract of land; on the East by Bolivar E. Thompson; on the South by Mike Bartish; and on the West by Public Road, known as the Greensburg and Springfield Road, said acre of ground being one half acre North and South, and two acres in length East and West, with all buildings ■ and improvements thereon, being the same property acquired by George W. Cunningham in Conveyance Book 52, Page 517, records of Livingston Parish, La., and by the vendors herein from the Succession of said George W. Cunningham, of record in Livingston Parish, Louisiana.
b. The said George W. Cunningham, then married to Mary June Addison, acquired the property from James A. King by deed dated March 24, 1937, recorded COB 52, page 517, records of Livingston Parish, Louisiana.
c. James A. King acquired the same property from Wesley D. Kinchen by deed dated August 13, 1929, recorded COB 46, page 2, records of Livingston Parish, Louisiana.
d. Wesley D. Kinchen acquired the same property from Fitzhugh L. Faust by deed dated February 25, 1918, recorded COB 32, page 425, records of Livingston Parish, Louisiana.
e. The said Fitzhugh L. Faust acquired the same property from Boli-ver E. Thompson by deed dated October 21, 1914, recorded COB *287 28, page 291, records of Livingston Parish, Louisiana.
f. The said Boliver E. Thompson acquired the same property while married to his first wife, Sara Jane White, by deed dated June 10, 1904, recorded COB 14, page 394, records of Livingston Parish, Louisiana, from James A. King.
g. James A. King acquired said property from N. M. Foster by deed dated October 22, 1895, recorded in COB 8, page 217, records of Livingston Parish, Louisiana.
h. The said N. M. Foster acquired the same property from Martha K. Knowles and W. C. Knowles by deed dated September 13, 1893, recorded COB 7, page 235, records of Livingston Parish, Louisiana.”
All of the above described and referred to acts of conveyance in this alternate chain of title are in evidence. We have examined each of these acts and find the description of the south line is common to all these transactions. The one acre of ground is described as bounded on the south by Mike Bartish. This is the identical boundary discussed supra as running on a traverse from a corner on the public highway North 78 degrees 55 minutes East (extending to Na-talbany River and on which the old wire fence was found).
From our examination of the alternate chain of title set out above, we are more convinced that the plaintiff has not shown an apparently valid title to the subject property.
LSA-C.C.P. Article 3653 provides:
“To obtain a judgment recognizing his ownership of the immovable property or real right, the plaintiff in a petitory action shall:
(1) Make out his title thereto, if the court finds that the defendant is in possession thereof; or
(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof.
Plaintiff admitted the defendant was in possession of the property, and we find that that she was possessing it as owner.
The cases are legion which hold the plaintiff, to successfully maintain a petitory action, has the burden of establishing a valid title in himself.
In Mecom v. Graves (1921), 148 La. 369, 374, 86 So. 917, 919, the Supreme Court stated:
“[4] By the nature of this suit, which is characterized in plaintiff’s brief as a petitory action, it is conceded that defendant is in possession as owner of the land; and, as such, she is entitled to stand upon her possession until and unless plaintiff shows a valid title in himself. The title of the defendant in a petitory action is not at issue until the plaintiff has proven an apparently valid title in himself. In this case, the defendant, without first proving her own title, was allowed to show, and did show, that the deed upon which plaintiff replied was absolutely null as to the land in contest. Plaintiff then had no interest in investigating defendant’s title.”
In Smith v. Chappell (1933) 177 La. 311, 148 So. 242, the Supreme Court, with Justice Odom as the organ, held:
[ 1 — 4] 1. A petitory action is one brought by an alleged owner of real estate who is out of possession against another having possession to determine ownership. The settled jurisprudence of this state is that a plaintiff in a peti-tory action, in order to recover, must rely on the strength of his own title and not on the weakness of that of his adversary. In order to maintain his suit, he carries the burden of proving title in himself. The title of the defendant is not an issue until plaintiff *288 has proved an apparently valid title in himself, (citation of cases omitted.)
“[5] From this rule it follows necessarily that, when a plaintiff claims title ■to a certain described lot of ground, ■he must show that his title covers the identical lot in controversy, (citation of cases omitted).”
Our Supreme Court stated again in the case of Cook et al. v. Martin et al. (1938) 188 La. 1063, 178 So. 881, 882:
“[1] This being a petitory action, the plaintiffs must rely on the strength of their own title and not on the weakness of the defendants’ title, which is not at issue until the plaintiffs have proved an apparent valid title in themselves. Article 44, Code Prac. (citation of cases omitted).
This court, in Chauvin v. LeBlanc (La. App.1962) 148 So.2d 182, said on page 185:
“[1-4] The primary question to be resolved is which party has title to the property in dispute. Plaintiff Chauvin may not recover the property simply because defendant lacks title to it, since, in a petitory action the plaintiff out of possession must make out his title to the property claimed and must recover upon the strength of his own title and not upon the weakness of the defendant possessor’s title, (citation of cases omitted).”
The trial court admitted evidence that Thompson’s heirs had sold timber from the tract of land situated between the old fence line and the south boundary as fixed by the Moore plat of 1935. Also testimony Was admitted, although vague, indefinite and inconclusive, tending to show defendant had approached the heirs of Thompson relative to purchase of the tract or an exchange of property. The trial judge commented on this testimony in his written reasons for judgment.
In determining title to the disputed property vests in the plaintiff, the trial
court determined, as we find from his written reasons for judgment, that plaintiff had made out a better title than the defendant, therefore plaintiff was entitled to prevail. This is error.
We are convinced, and so hold, the plaintiff has failed to make out title to the subject property.
For the foregoing reasons, the judgment of the lower court is reversed.
Reversed.
REID, J., recused.

. Bolivar E. Thompson will hereinafter most of the time be referred to simply as Thompson.

. This is the same description as contained in- deed from James King to Bolivar Thompson to be hereinafter set forth.

. We will refer to this public road as the west boundary of the twenty acre Thompson tract. This boundary not certain in’ the description, is not controversial between the parties to this action.

. This has reference to the chain of title we have hereinabove discussed.