380 So.2d 166 (1979)
Olezime CHERAMIE et al.
v.
Alidore CHERAMIE et al.
No. 12844.
Court of Appeal of Louisiana, First Circuit.
December 27, 1979.
Rehearing Denied February 20, 1980.
*167 Carlton J. Cheramie, Golden Meadow, for plaintiffs and appellants Webb Cheramie, Erick Cheramie, Theo J. Cheramie, Mrs. Viola Cheramie Dantin, Mrs. Hazel Cheramie Barrios, Renie J. Cheramie, George Cheramie, Harvey Cheramie, Ansay Cheramie, Asse Cheramie Crosby.
David L. Landry, Thibodaux, for plaintiffs and appellants Annabelle Cheramie Pitre, Thelma Cheramie Messick, Anna Cheramie Camardelle, Marilyn Cheramie DeMatteo, Debra Cheramie Esserman, Stephen J. Cheramie, Jr., Stephanie Cheramie.
Maurice J. Serpas, Galliano, for defendants and appellees Edwin Cheramie, Mrs. Evelia Cheramie, Ludovic Cheramie, Mrs. Rita Cheramie, Mrs. Gail Hebert Cheramie.
Before COVINGTON, LOTTINGER and COLE, JJ.
COLE, Judge.
This is a petitory action in which the principal issue is whether the existence of a usufruct on the disputed tract prevented defendants from acquiring ownership of the land through thirty year acquisitive prescription. Essentially, the suit began as an assertion of ownership by Olezime Cheramie over a tract of land which was claimed and possessed by his brothers, Alidore and Ozeme. Olezime maintains he became owner of the disputed tract by virtue of a 1907 partition executed by him, his brothers and sister.
This suit was filed in 1951 by nine plaintiffs against forty-five defendants. Although the trial was held in 1956 and 1957, no judgment was rendered until 1979 because the judge who presided over the trial left office without rendering a decision. Over the years the number of litigants has been greatly increased through substitutions of parties. Plaintiffs are the heirs and assigns of Olezime. Defendants are basically the heirs and assigns of Alidore and Ozeme. Many of the defendants are holders of mineral interests.
The lower court, sustaining pleas of five year liberative prescription and thirty year acquisitive prescription, held for defendants. Plaintiffs appeal.
The contested property was described in the petition as follows:
A CERTAIN TRACT OF LAND, situated in the Parish of Lafourche, Louisiana, on the left descending bank of Bayou Lafourche, about 55 miles below the Town of Thibodaux, near the Town of Golden Meadow, Louisiana, measuring a front of two hundred ninety-three and 44/100 (293.44 ft.) feet on the left descending bank of said bayou by a depth of forty arpents between parallel lines, comprised within and being the Northernmost one-quarter of Section 23, Township 19 South, Range 22 East, Southeastern Land District of Louisiana, West of the Mississippi River; said tract of land being bounded in the front or on the West by said Bayou Lafourche, above, or on the North by the Northern boundary line of said Section *168 23, in the rear, or on the East, by the Eastern boundary line of said Section 23, and bounded below, or on the South, for a distance of 1000 feet by property of Eugene Cheramie, and for the remainder of its depth by property of Alidore Cheramie; together with all buildings and improvements thereon and all rights, ways, privileges and servitudes thereunto belonging, or in anywise appertaining.
This land is part of a larger tract acquired in 1866 from Martial Celestin Orgeron by Olucien Cheramie, father of Olezime, Alidore, and Ozeme. The act of sale contained the following property description:
A certain tract of land situated in the Parish of Lafourche, on the left descending bank of Bayou Lafourche bounded above by a tract of land belonging to Gratien Thibodaux, and below by a tract of land belonging to Charles Orgeron with all the buildings and improvements thereon.
Said land has been acquired by the vendor from the State of Louisiana and is described as being Lot [or Section] Number Twenty-three (23) in Township Number Nineteen South of Range Number Twenty-two East, containing one hundred and fifty-eight acres and Seventy-five hundredths of an acre.
Later Olucien acquired a second tract along Bayou Lafourche. This property was located below the first tract in section 22.
In 1869 Olucien Cheramie married Aglae Hebert. From this marriage eight children were born: Olezime, Alidore, Ozeme, Theodore, Joseph Ovide, Julien, Olucien, Jr., and Adolphine. When Olucien died around 1882 he was survived by his widow and eight children.
On July 24, 1907, the Cheramies executed three notarial acts. In the first, Mrs. Aglae Hebert Cheramie sold to her eight children her interest, if any, in the two tracts of land along Bayou Lafourche acquired by her late husband.
The second act was a partition among the eight children of the two tracts. The lower tract, which was located in section 22, was divided into four parcels measuring one arpent front by forty arpents in depth. These four parcels were allotted to Joseph Ovide, Julien, Olucien, Jr., and Adolphine. The upper tract, which was divided into four lots measuring one acre front by forty acres in depth, was described in the act of partition as follows:
A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left bank of Bayou Lafourche at about Fifty five miles below the Town of Thibodeaux, measuring Four acres more or less front on Said Bayou Lafourche by Forty Acres in depth, Bounded above by land formerly belonging to Estate of Gratien Thibodeaux and now owned by Francois Deramee and below by other land of Francois Deramee and formerly to Francois Doucet together with the buildings and improvements thereon.
The first upper acre front of this tract was allotted to Olezime and described as "being bounded above by land formerly belonging to Est. Gratien Thibodeaux now owned by Francois Deramee, and below by land allotted to Alidore Cheramie herein." The second acre front went to Alidore, the third to Ozeme, and the fourth to Theodore.
In the third act executed that day, the eight Cheramie children acting as "owners in a divided state" granted to their mother a usufruct for life over their respective tracts that they had been allotted in the partition. Mrs. Cheramie was not a party to this act.
Shortly after the partition each child went into possession of his tract. Theodore testified he, Olezime, Ozeme, and Alidore together measured off their four tracts. No survey was made. The present dispute arises out of the fact that Olezime, who had been allotted the first upper acre front of the upper tract, settled on land that was entirely in section 24, to which Olucien and his heirs had no title. Olezime and the other members of his family thought the land he took possession of was part of the tract Olucien had purchased from Martial Orgeron. Alidore testified the boundary with Thibodaux had been marked during his father's lifetime with a levee and canal *169 built as a joint project by his father and Thibodaux. Olezime possessed up to this canal.
In 1934, Nolan Tomplain, whose ancestor in title was Gratien Thibodaux, brought suit against Olezime asking the court to fix the boundary between their respective tracts of land. Olezime answered admitting the true boundary was the section line between section 23 and 24, but he also asserted he and his father had possessed for over thirty years up to a boundary line marked by a canal and fence. A survey conducted in connection with this suit showed the land Olezime possessed to be in section 24. The judgment in the Tomplain suit, rendered in 1936, found that although Tomplain had record title, Olezime and his father had possessed all but the rear portion of the tract in excess of thirty years giving Olezime prescriptive title.
In 1951 Olezime brought this suit claiming that by virtue of the 1907 partition he was owner of the upper quarter of section 23. The land Olezime claims includes all of Alidore's tract and part of Ozeme's. Defendants assert plaintiffs do not have valid record title and claim ownership through ten and thirty year acquisitive prescription. Additionally, some defendants plead five year liberative prescription.
On the issue of the validity of plaintiffs' title, we quote with approval from the district court's astute reasons for judgment:
The evidence shows that Olezime Cheramie and his successors or assigns have never been in possession of the disputed property in this case. In this factual setting, the burden on the plaintiffs is that they must prove the strength of their own title and not the weakness of their adversaries. They must show valid record title, good against the world, and the title of the defendants does not come into question until the plaintiffs have proved an apparently valid title in themselves. Articles 3651 & 3653 Code of Civil Procedure; Pure Oil Company v. Skinner, 294 So.2d 797 ([La.] 1974); Egle v. Constantin, 198 La. 899, 5 So.2d 281 (1941); Smith v. Chappell, 177 La. 311, 148 So. 242 (1933); Voisin v. Luke, 341 So.2d 6 ([La.App.] 1st Cir. 1976); Thompson v. Frazier, 184 So.2d 283 ([La.App.] 1st Cir. 1966).
A review of the 1866 sale between Olucien Cheramie and Martial Celestine Orgeron clearly shows that it was the intention of the parties that Olucien Cheramie acquire Section 23 of Township 19 South, Range 22 East, in accordance with the original government survey. The description indicates that the parties focused their attention on the specific tract designated rather than on any established boundaries or physical possession. The problem in this case is caused by the fact that Olucien Cheramie and his heirs and successors physically possessed land north of Section 23 in Section 24 as well as the land in Section 23. In the three acts executed in 1907, the parties made no reference to lot, section, township or range designations. Instead these acts describe the various tracts by their boundaries or adjoining tenaments and indicate an intent by the parties to transfer or assign ownership on the basis of what is included within the boundaries described. If a piece of land is sold, alienated, or transferred from one fixed boundary to another, the transferee obtains the land between the boundaries. Articles 854 and 2495 of the Civil Code. Such a transfer by metes and bounds is also referred to as per aversionem. See Hingle, Sales of immovables: per measure, per lump, per aversionema clarification, 47 Tulane Law Review 852 (1973). Where a transfer is made per aversionem a presumption arises that the parties place their attention on the particular property between the boundaries and did not particularly concern themselves with measure or dimension. A review of the three acts executed in 1907 clearly shows that the parties intended to voluntarily divide in kind the properties which were being actually physically possessed by the Cheramie family without regard to a specific government survey title description.

*170 Had the parties specifically conveyed to Olezime Cheramie full ownership of the northern one-fourth of Section 23 of Township 19 South, Range 22 East, then he and his successors would have good title. The description does not recite this. Olezime Cheramie received the upper one acre front of the first tract described which was bounded above by land owned by Francois Deramee and below by land allotted to Alidore Cheramie. This tract, although physically possessed by the Cheramie family, was located totally outside of Section 23. By coincidence the boundary ditch and fence between Olezime and Alidore is almost exactly on the Section line between Section 23 and 24. (See Exhibit LX-1 in Volume I). The parties immediately went into physical possession of the tracts allotted to them and shortly thereafter constructed boundary ditches and exercised other acts of dominion. This action demonstrates their intention to partition by possession rather than title.
The court is admonished by Article 1945 of the Civil Code to give legal effect to contracts according to the true intent of the parties, that the intent is to be determined by the words of the contract and that it is the common intent of the parties that is to be sought for. Sabine Construction Company, Inc. v. Cameron Sewerage District No. 1, 298 So.2d 319 ([La.App.] 3d Cir. 1974); Lanneau v. Capital Transportation Corporation, 292 So.2d 810 ([La.App.] 1st Cir. 1974).
The act of partition allocated to Olezime Cheramie the property `bounded above by land formerly belonging to Est. Gratien Thibodeaux, now owned by Francois Deramee, and below by land allotted to Alidore Cheramie herein.' Alidore Cheramie went into possession of the tract allotted to him in the partition as did Olezime Cheramie. Since Olezime Cheramie is bounded by Alidore Cheramie, he cannot now claim that the act of partition gives him title to a tract of land that he voluntarily ceded to and conceded was owned by Alidore Cheramie. Since the partition was voluntarily and privately negotiated between the parties the law presumes that each of the parties received his proper share. Marcello v. Marcello, 178 So.2d 416 ([La.App.] 1st Cir. 1965).
Accordingly, it is the opinion of this court that the plaintiffs have failed to show valid record title, good against the world, in themselves.
We also concur with the district court's sustaining of defendants' plea of thirty year acquisitive prescription.
The possession necessary for thirty year acquisitive prescription is set forth in the following Civil Code articles:
Art. 3500. The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.
Art. 3503. How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it.
There was extensive testimony at trial on the possession exercised by Alidore and Ozeme over their respective tracts. Relatives, party litigants, neighbors and former employees all testified that Alidore and Ozeme openly possessed their respective tracts as owners and were recognized as owners by their family and community.
In 1907, Alidore and Ozeme, both of whom never married, were living with their mother in section 22 on the tract that was allotted to Olucien, Jr. They remained there until approximately 1922 when they moved into a house on Ozeme's land. Mrs. Cheramie continued to live with her two bachelor sons until her death in January 1935.
As early as 1911, Alidore had a canal and fence running approximately thirty arpents from the bayou separating his tract from Olezime's. On his lower boundary with Ozeme there was a short canal and a fence. There was also a fence across the rear of his *171 property approximately thirty arpents back. Alidore cultivated his high lands from shortly after the partition until approximately 1944. Several witnesses who worked on Alidore's land estimated they planted about eighteen or twenty arpents from the bayou. These witnesses testified they were hired and paid by Alidore and considered him the owner of the land they worked. From time to time Alidore and some of his brothers kept cattle on the rear of his tract behind the rear fence. Alidore also trapped on his land. Beginning in 1934, Alidore sold off several lots on the front of his tract for homesites. He also conveyed mineral rights to his property. Ozeme, too, began cultivating his land shortly after the partition. His lower boundary with Theodore was marked with a canal. Around 1934 he sold a portion of the front part of his tract. Until this suit, Olezime never asserted a claim to the disputed land.
The above detailed acts of possession are clearly sufficient for thirty year acquisitive prescription of the two one-acre by forty-acre tracts. The existence of usufructs in favor of Mrs. Cheramie until 1935 does not defeat the acquisitive prescription.
The following Civil Code articles are pertinent:
Art. 3438. One may acquire possession of a thing, not only by himself, but also through others who received it for him and in his name. But in this case it is necessary that the person receiving the possession should have had intention of receiving for the other.
Art. 3490. The circumstance of having been in possession by the permission or through the indulgence of another person, gives neither legal possession nor the right of prescribing.
Thus, those who possess precariously, that is, by having prayed the master to let them have the possession, do not deprive him thereof, but, possessing by his consent, they possess for him.
Art. 3510. Those who possess for others and not in their own name, can not prescribe, whatever may be the time of their possession.
Thus, farmers, tenants, depositaries, usufructuaries and all those generally who hold by a precarious tenure and in the name of the owner, can not prescribe on the thing thus held.
It is clear from the above articles that a usufructuary is a precarious possessor who possesses for the naked owner. As was discussed above, Alidore and Ozeme were allotted the disputed property in the 1907 act of partition. In an act executed the same day, each granted his mother a usufruct over the tract he had been allotted. Any exercise by Mrs. Cheramie of her rights as usufructuary would not have interrupted Alidore's or Ozeme's possession. Rather her possession as usufructuary would have constituted possession for the naked owner from whom she derived her rights, i. e. Alidore or Ozeme. Since Olezime was not allotted the disputed tract in the 1907 partition, the usufruct he gave his mother did not cover that property. Instead it was over the tract in section 24. We note also it is very doubtful Mrs. Cheramie ever exercised her rights of enjoyment.
Since the 1907 partition assigned Olezime property to which the family had no title, Olezime clearly had an action in warranty against his brothers and sisters. La.Civ.Code art. 1384. However this action prescribed five years from the day of his partial eviction by the 1936 judgment in the Tomplain case. La.Civ.Code arts. 1396, 3542.
Because of the conclusions reached above, it is unnecessary to discuss the issues of Mrs. Cheramie's acceptance of the usufructs, the termination of the usufructs by non-use, and ten year acquisitive prescription.
The judgment of the district court is affirmed. Costs of this appeal are to be paid by plaintiffs-appellants.
AFFIRMED.